1  KATHARINE DEMGEN (SBN 135254)
   Attorney at Law
2  88 Howard Street, Suite 2110
   San Francisco, CA 94105
3  Telephone: (415) 939-2450

4  Attorney for Petitioner
   MARK R. WILKES
5

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10 MARK R. WILKES,                     )        CASE NO.
                                       )
11          Petitioner,                )
                                       )
12     v.                              )        PETITION FOR WRIT OF HABEAS
                                       )        CORPUS BY A PERSON IN STATE
13 THOMAS L. CAREY, Warden of          )        CUSTODY (28 U.S.C. § 2254)
   Solano State Prison,                )
14                                     )
                                       )
15          Respondent.                )
   _____)
16

17

18         Petitioner MARK R. WILKES, by and through his counsel, respectfully petitions this

19 Court for a writ of habeas corpus pursuant to 28 U.S.C. section 2254, *et seq.,* and by this verified

20 petition alleges the following facts and causes for issuance of the writ.

21

22

23

24

25

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**                                                   **1**

**STATEMENT OF THE CASE**                                          **1**

**CLAIMS FOR RELIEF**                                              **5**

    **CLAIM ONE:**

    **THE TRIAL COURT'S DENIAL OF PETITIONER'S
REQUEST TO INTRODUCE A VIDEOTAPE OF
THE POLICE INTERVIEW OF WILLIAM
BRUNSON VIOLATED PETITIONER'S RIGHTS TO
CONFRONTATION AND CROSS-EXAMINATION
OF WITNESSES AND RIGHT OF DUE PROCESS
UNDER THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

    **CLAIM TWO:**                                 **6**

    **THE TRIAL COURT'S DENIAL OF PETITIONER'S
REQUEST TO INTRODUCE A VIDEOTAPE OF
PETITIONER'S INTERVIEW BY DISTRICT
ATTORNEY INVESTIGATOR ROBERT SIMERSON
VIOLATED PETITIONER'S RIGHT TO PRESENT A
DEFENSE AND RIGHT OF DUE PROCESS UNDER
THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

    **CLAIM THREE:**                               **8**

    **THE ADMISSION OF EVIDENCE OF ACTS OF
PRIOR DOMESTIC VILENCE, AND THE TRIAL
COURT'S RELATED JURY INSTRUCTION,
CONSTITUTED VIOLATIONS OF PETITIONER'S
RIGHT OF DUE PROCESS UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS**

# TABLE OF CONTENTS

**Page**

**CLAIM FOUR:**                                                 **10**

**THE TRIAL COURT'S INSTRUCTION REQUIRING
JURORS TO INFORM THE COURT REGARDING
JURY DELIBERATIONS VIOLATED
PETITIONER'S RIGHTS TO A JURY TRIAL, TO
JUROR UNANIMITY, AND TO DUE PROCESS
UNDER THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

**PRAYER FOR RELIEF**                                          **11**

**VERIFICATION**                                               **12**

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**                                               **13**

**STATEMENT OF FACTS**                                         **13**

**POINTS AND AUTHORITIES**

**CLAIM ONE:**                                                 **16**

**THE TRIAL COURT'S DENIAL OF PETITIONER'S
REQUEST TO INTRODUCE A VIDEOTAPE OF
THE POLICE INTERVIEW OF WILLIAM
BRUNSON VIOLATED PETITIONER'S RIGHTS TO
CONFRONTATION AND CROSS-EXAMINATION
OF WITNESSES AND RIGHT OF DUE PROCESS
UNDER THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

# TABLE OF CONTENTS

**Page**

**CLAIM TWO:**                                                      **18**

**THE TRIAL COURT'S DENIAL OF PETITIONER'S
REQUEST TO INTRODUCE A VIDEOTAPE OF
PETITIONER'S INTERVIEW BY DISTRICT
ATTORNEY INVESTIGATOR ROBERT SIMERSON
VIOLATED PETITIONER'S RIGHT TO PRESENT A
DEFENSE AND RIGHT OF DUE PROCESS UNDER
THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

**CLAIM THREE:**                                                    **20**

**THE ADMISSION OF EVIDENCE OF ACTS OF
PRIOR DOMESTIC VILENCE, AND THE TRIAL
COURT'S RELATED JURY INSTRUCTION,
CONSTITUTED VIOLATIONS OF PETITIONER'S
RIGHT OF DUE PROCESS UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS**

**CLAIM FOUR:**                                                     **25**

**THE TRIAL COURT'S INSTRUCTION REQUIRING
JURORS TO INFORM THE COURT REAGRDING
JURY DELIBERATIONS VIOLATED
PETITIONER'S RIGHTS TO A JURY TRIAL, TO
JUROR UNANIMITY, AND TO DUE PROCESS
UNDER THE FIFTH, SIXTH AND FOURTEENTH
AMENDMENTS**

**CONCLUSION**                                                      **30**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alford v. United States,* 282 U.S. 687 (1931)    16

*Apodaca v. Oregon*, 406 U.S. 404 (1972)    26

*Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)    28-29

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)    17, 19, 24, 29

*Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir. 1980)    16

*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)    18

*Chapman v. California*, 386 U.S. 18 (1967)    22

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)    18

*Douglas v. Alabama*, 380 U.S. 415, 419 (1965)    16

*Dunn v. United States*, 284 U.S. 390, 393-94 (1932)    28

*Garceau v. Woodford*, 275 F.3d 769, 777 (9th Cir. 2001)    22

*Gordon v. United States*, 383 F.2d 936, 940-41 (D.C. Cir. 1967)    21

*Jammal v. Van De Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)    22

*McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993)    22

*Michelson v. United States*, 335 U.S. 469 (1948)    21

*Murray v. Superintendent Ky. State Penitentiary*,
    651 F.2d 451, 453 (6th Cir. 1981)    22

*Old Chief v. United States*, 519 U.S. 172, 181 (1997)    21

*Olden v. Kentucky*, 488 U.S. 227, 231 (1988)    16

*Patterson v. McCarthy*, 581 F.2d 220 (9th Cir. 1978)    16

*Smith v. Illinois*, 390 U.S. 129, 133 (1968)    16

*Spencer v. Texas*, 385 U.S. 554 (1967)    21, 22

# TABLE OF AUTHORITIES

**Page(s)**

*Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993)      21, 29

*Taylor v. Illinois*, 484 U.S. 400, 408 (1988)      18

*United States v. Antar*, 38 F.3d 1348, 1367 (3d Cir. 1994)      26

*United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)      27

*United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976)      16, 17

*United States v. Powell*, 469 U.S. 57, 64 (1984)      28

*United States v. Schmitz*, 525 F.2d 793, 794 (9th Cir. 1975)      28

*United States v. Symington*, 195 F.3d 1080, 1086 (9th Cir. 1999)      26, 27

*United States v. Thomas*, 116 F.3d 606, 618-19 (2d Cir. 1997)      27

*United States v. Williams*, 668 F.2d 1064, 1069-70 (9th Cir. 1981)      16

*Woodford v. Garceau*, 538 U.S. 202 (2003)      22

**STATE CASES**

*People v. Engelman*, 28 Cal.4th 436, 441 (2002)      25, 26

**CALIFORNIA STATE STATUTES**

Evidence Code section 352      8, 20

Evidence Code section 1109      8, 20

Evidence Code section 1101      20

Penal Code section 187      1

Penal Code section 245(a)(1)      1

Penal Code section 273.5      1

Penal Code section 664      1

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

Penal Code section 12022(b)(1)                                1

Penal Code section 12022.7(a)                                1

Penal Code section 12022.7(e)                                1


**<u>OTHER AUTHORITIES</u>**

United States Constitution

     Fifth Amendment                              *passim*

     Sixth Amendment                              *passim*

     Fourteenth Amendment                         *passim*

CALJIC No. 2.50.02                                 8, 9, 20

CALJIC No. 17.41.1                                 10, 25, 26, 28

# I.

# INTRODUCTION

Petitioner is unlawfully confined and restrained of his liberty at the Solano State Prison, Vacaville, California, by Warden Thomas L. Carey, pursuant to a judgment of conviction of corporal injury to spouse, attempted murder, and two counts of assault with a deadly weapon. (Mendocino County Superior Court No. 0144275).

# II.

# STATEMENT OF THE CASE

A.    Petitioner was charged with the attempted murder and the assault with a deadly weapon of William Brunson (Counts 1 and 2, respectively), and of petitioner's spouse, Laurel Wilkes (Counts 3 and 5, respectively), and one count of corporal injury to his spouse, Laurel Wilkes (Count 4).  (Pen. Code, §§ 664/187 [attempted murder]; 245, subd. (a)(1) [assault with a deadly weapon]; 273.5 [corporal injury to spouse].)  The information further alleged that petitioner personally used a deadly weapon in the commission of the attempted murder and corporal injury offenses (Pen.Code, § 12022, subd. (b)(1)); that he personally inflicted great bodily injury in the commission of all offenses; and that the injuries to his spouse were committed under circumstances involving domestic violence.  (Pen.Code, §§ 12022.7, subd. (a) (Counts 1 and 2); 12022.7, subd. (e) (Counts 3and 5)  (CT[1] 64-70)

B.    Petitioner pleaded not guilty and was tried by a jury.

C.    Throughout the trial, petitioner was represented by Deputy Public Defender Garry A. Preneta.

---

[1] "CT" refers to the Clerk's Transcript in petitioner's direct appeal to the California Court of Appeal, First Appellate District, No. A097557.

1    D.    On November 19, 2001, after a four-day trial, the jury convicted petitioner of the

2  attempted murder of William Brunson, assault with a deadly weapon of both William Brunson

3  and Laurel Wilkes, and corporal injury to Laurel Wilkes.  It also found true the allegations of

4  personal use of a deadly weapon and personal infliction of great bodily injury related to those

5  offenses.  (CT 216-229)

6    E.    On January 11, 2002, the trial court sentenced petitioner to state prison for a term

7  of sixteen years.

8    F.    On January 14, 2002, petitioner timely filed a notice of appeal from the judgment

9  of conviction in the California Court of Appeal, First Appellate District.  (CT 324-26)

10    G.    On August 7, 2002, petitioner, by his counsel, served and filed his opening brief

11  on appeal.

12        1.    The issues raised on direct appeal included the following:

13        a.    Whether the admission of evidence of prior uncharged acts of domestic

14  violence, and a related instruction to the jury, constituted a violation of petitioner's right to due

15  process under the Fifth and Fourteenth Amendments;

16        b.    Whether the trial court's instruction to the jury regarding the consequences

17  of a juror's refusal to deliberate or expression of intention to disregard the law violated

18  petitioner's right to a jury trial, to juror unanimity and to due process under the Fifth, Sixth and

19  Fourteenth Amendments;

20        c.    Whether the trial court's imposition of a "great bodily injury"

21  enhancement to petitioner's sentence on Count 4 (corporal injury to spouse) constituted an

22  impermissible dual use of facts and an illegal sentence under California law.

23        2.    In an unpublished opinion filed on  February 27, 2003, the Court of

24  Appeal affirmed the judgment of conviction.  *People v. Wilkes,* A097557.  (Exhibit A)

25

H.      Simultaneous with his direct appeal, on August 7, 2002, petitioner, by his counsel, filed a petition for writ of habeas corpus in the California Court of Appeal, First Appellate District.

1.      The issues raised in the state petition for writ of habeas corpus included the following:

a.      Whether the trial court's denial of petitioner's request to present impeachment evidence in the form of a videotape of the police interview of William Brunson constituted a violation of petitioner's right to confront and cross-examine witnesses under the Sixth Amendment;

b.      Whether the trial court's denial of petitioner's request to present evidence in the form of a videotape of his interview by the district attorney's investigator violated his right to present a defense under the Fifth and Fourteenth Amendments;

c.      Whether trial counsel's failure to include the videotapes in the designation of the record on appeal constituted ineffective assistance of counsel in violation of the Fourth Amendment.

2.      In an unpublished order filed February 27, 2003, the Court of Appeal denied the writ.  *In re Mark Robert Wilkes* on Habeas Corpus, A099692.  (Exhibit B).

I.      On April 7, 2003, petitioner, by his counsel, filed in the California Supreme Court a petition for review of the decision affirming the judgment of conviction (S114859) and a petition for review of the order denying the writ (S114860).

1.      In an unpublished order filed on May 14, 2003, the California Supreme Court denied the petition for review of the decision affirming the judgment of conviction. *People v. Wilkes,* S114859.  (Exhibit C)

2.      In an unpublished order filed on June 18, 2003, the California Supreme Court denied the petition for review of the order denying the writ.  *In re Mark R. Wilkes* on Habeas Corpus, S114860.  (Exhibit D)

J.      All grounds presented herein to this Court have been presented fairly to the California Supreme Court.

K.      There are no other petitions challenging the judgment herein that are currently pending in any court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.

### CLAIMS FOR RELIEF

### <u>CLAIM ONE:</u>

**THE TRIAL COURT'S DENIAL OF PETITIONER'S REQUEST TO INTRODUCE A VIDEOTAPE OF THE POLICE INTERVIEW OF WILLIAM BRUNSON VIOLATED PETITIONER'S RIGHTS TO CONFRONTATION AND CROSS-EXAMINATION OF WITNESSES AND RIGHT OF DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

1.      During the trial, William Brunson presented the image of a man who was highly emotional when recalling the incident.  He was depressed, tearful, and repeatedly requested a recess.  (RT 260, 264, 288, 291)  During a videotaped interview[2] of Brunson, he appeared calm and collected.

2.      During the trial, Brunson testified that at the time of the incident a light was on in the room, but was disconnected during his struggle with petitioner.  At the preliminary hearing, he testified that the television, kitchen light and outdoor light illuminated the room during the struggle.  (RT 213-214, 275-76, 279)  During the taped interview, he stated that the room was entirely dark.

3.      During the trial, Brunson admitted that he, petitioner, and petitioner's wife, had been involved in an ongoing three-way sexual relationship for several months preceding the struggle.  (RT 270, 300-01)  During the taped interview, he flatly denied that his relationship with petitioner and petitioner's wife was ever sexual in nature.

---

[2] A copy of the videotape was lodged with the California Court of Appeal as Exhibit E to the state petition for writ of habeas corpus.

4**.**    The trial court denied petitioner's request to play a portion of the videotape of the police interview of Brunson for the purpose of impeaching Brunson's trial testimony, his credibility, and his in-court demeanor.  (RT 282, 290-91)

5.    The trial court's preclusion of this evidence violated petitioner's right to confront witnesses against him and resulted in a violation of his right to a fair trial, particularly since this case could only be decided based on a determination regarding the credibility of witnesses.


## CLAIM TWO:

**THE TRIAL COURT'S DENIAL OF PETITIONER'S REQUEST
TO INTRODUCE A VIDEOTAPE OF PETITIONER'S
INTERVIEW BY DISTRICT ATTORNEY INVESTIGATOR
ROBERT SIMERSON VIOLATED PETITIONER'S RIGHT TO
PRESENT A DEFENSE AND RIGHT OF DUE PROCESS UNDER
THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

1.    During the trial, Robert Simerson testified that petitioner admitted during his videotaped interview[3] with Simerson that he struck Brunson with a hammer at least once, and that he "guess[ed]" that he also struck his wife with a hammer.  (RT 414-16) Simerson further testified that petitioner's expressions of remorse during the interview were self-serving. (RT 417-19)   The taped interview demonstrates, by petitioner's statements, demeanor and body language, that he had no intention of harming anyone, and reveal his extreme sorrow and remorse over injuries that were accidentally inflicted on Brunson and petitioner's wife.

---

[3] A copy of the videotape was lodged with the California Court of Appeal as Exhibit F to the state petition for writ of habeas corpus.

2.    Prior to Simerson's testimony, and again after Simerson's testimony concluded, petitioner requested permission to play the videotape of that interview.  On each occasion, the trial court denied the request as a "waste of time."  (RT 384-87, 420-21)

3.    The trial court's refusal to permit this evidence deprived petitioner of his right to a fair trial because it prevented him from introducing the best evidence in his defense in a circumstantial case resting on the jury's determination of his credibility.

### CLAIM THREE:

**THE ADMISSION OF EVIDENCE OF ACTS OF PRIOR DOMESTIC VIOLENCE, AND THE TRIAL COURT'S RELATED JURY INSTRUCTION, CONSTITUTED VIOLATIONS OF PETITIONER'S RIGHT OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS**

1.      The facts underlying the offense charged under Count 4 (corporal injury to spouse) concerned a physical struggle in petitioner's home between petitioner and William Brunson, in which petitioner's spouse sustained head injuries allegedly after being struck by a hammer held by petitioner.  Petitioner did not recall striking his wife, and did not realize she was injured in any way until he saw her in the hospital emergency room subsequent to the incident. (RT 196, 199-201, 413-415, 419, 492-95, 504-08, 510, 517-18)

2.      Prior to trial, the prosecutor made a motion *in limine* to introduce evidence of prior uncharged acts of domestic violence between petitioner and his spouse.  (CT 42-46)

3.      Over the objection of petitioner's trial counsel, the trial court granted the motion, relying on California Evidence Code sections 352 and 1109.  (CT 108; RT 25, 94-95)

4.      When petitioner testified on his own behalf at trial, he admitted that he and his wife had a "knock-down fight" some fifteen years before; that he had struck her about seven years before; and that during an argument he had thrown a plastic bottle of mayonnaise against a wall.  (RT 522-24)

5.      Petitioner's wife did not testify at trial.

6.      The trial court instructed the jury pursuant to CALJIC No. 2.50.02 that evidence of prior domestic violence, if proven by a preponderance of the evidence, could be used to infer that petitioner had a disposition to commit other offenses involving domestic violence, and,

therefore, that he was likely to have committed the offense charged in Count 4. (CT 150-51; RT 597-98)

7.    CALJIC No. 2.50.02 and California Evidence Code section 1109 violate federal due process guarantees of a fair trial, because, together, they permit a jury to ignore the presumption of innocence and to find guilt based on evidence that does not amount to proof beyond a reasonable doubt.

1

## CLAIM FOUR:

**THE TRIAL COURT'S INSTRUCTION REQUIRING JURORS TO INFORM THE COURT REGARDING JURY DELIBERATIONS VIOLATED PETITIONER'S RIGHTS TO A JURY TRIAL, TO JUROR UNANIMITY, AND TO DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

1.     At the conclusion of the evidence, the trial court instructed the jury pursuant to CALJIC No. 17.41.1 that each juror was obligated to report to the court regarding any other juror's refusal to deliberate or expression of an intention to disregard the law.  (CT 188; RT 674)

2.     CALJIC No. 17.41.1 violates a defendant's federal constitutional right to a jury trial, including the right to juror unanimity and juror nullification, because it threatens interference with private jury deliberations and punishes the free expression of views and opinions of the evidence during those deliberations.

1

2                                **PRAYER FOR RELIEF**

3          WHEREFORE, petitioner respectfully requests that this Court:

4          A.      Take judicial notice of the record, briefs, petitions, and exhibits thereto,

5   related to the appeal before the California Court of Appeal, First Appellate District, No.

6   A097557;

7          B.      Issue an Order to Show Cause, directing the State to show cause why the

8   requested relief should not be granted;

9

10         C.      Following consideration of the Return and Traverse and any further

11  proceedings ordered by this Court, issue a Writ of Habeas Corpus reversing petitioner's

12  conviction in its entirety;

13         D.      Grant whatever further relief this Court deems appropriate and in the

14  interests of justice.

15  DATED:        July __, 2004

16                                             Respectfully submitted,

17

18                                             _____

19                                             KATHARINE DEMGEN
                                               Attorney for Petitioner
20

21

22

23

24

25

**VERIFICATION**

STATE OF CALIFORNIA        )
                                 )     ss:
COUNTY OF SAN FRANCISCO   )

     I, KATHARINE DEMGEN, declare:

     I am an attorney admitted to practice before the courts of the State of California, including the United States District Court, Northern District of California, and am the attorney for petitioner herein.

     Petitioner is unable to make this verification due to his confinement at the Solano State Prison, Vacaville, California.  I am authorized to file this petition on his behalf.

     I drafted the foregoing Petition for Writ of Habeas Corpus and know the contents thereof.  I hereby verify that the facts are true as supported by citations to the record in California Court of Appeal No.  A097557.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed at San Francisco, California, on this _____ day of July, 2004.


                              _____
                              KATHARINE DEMGEN

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

## I.  INTRODUCTION

Petitioner Mark R. Wilkes is currently serving a 16-year term in state prison following a judgment of conviction by a jury that heard evidence which did not amount to proof beyond a reasonable doubt; that was prevented from hearing evidence pertinent to issues concerning the credibility of witnesses and petitioner's defense; that was effectively instructed to ignore the presumption of innocence; and that was threatened against freely deliberating its verdict.

As a consequence of these grievous violations of petitioner's federal constitutional rights to confront and cross-examine witnesses, to present a defense, to a fair and impartial jury, to a unanimous verdict, and to due process under the Fifth, Sixth and Fourteenth Amendments, a writ of habeas corpus is required.

## II.  STATEMENT OF FACTS

Prior to the incident which led to the charges brought in this case, petitioner and his wife, Laurel, had their marital difficulties, particularly during years when they both were drinking heavily and during times of financial strain.

On one occasion, in or about 1986, they had a "knock-down" fight.  Nearly eight years later, petitioner slapped Laurel, who then beat him until her anger subsided.  During another argument, petitioner threw a plastic bottle of mayonnaise against a wall. However, after nearly separating January 2001, the two reconciled and moved into a new house together, promising to work on their marriage.  (RT 460, 470-71, 522-24)

In February or March 2001, petitioner and William Brunson, a co-worker, began a friendship which turned into a sexual relationship between Brunson, petitioner and Laurel. On several occasions, and as recently as three days prior to the incident, Brunson had sexual relations with Laurel. (RT 166-67, 300-301, 434-438)

On the evening of July 3, 2001, Brunson arrived at petitioner's house to spend the Fourth of July holiday with petitioner's family. After hearing a "heated discussion" between petitioner and Laurel, he saw petitioner leave the house. (RT 168-70, 293-95)

In the late afternoon of July 4, petitioner returned to the house as Brunson, Laurel, and petitioner's children were preparing to go to a barbecue and watch the fireworks. When petitioner asked Brunson if he could help petitioner get some additional work, Brunson said no. A few minutes later, petitioner drove away, and Brunson, Laurel and the children left to watch the fireworks. (RT 171-75, 453-55)

Shortly thereafter, petitioner returned to the house and went into the bedroom, where he saw two empty condom wrappers on the headboard of the bed. Since petitioner did not use condoms, he knew they had been used by Brunson. Believing that his wife had recently had sex with Brunson, and upset that Laurel had ignored his feelings, petitioner wrote a message to her on the bedroom wall, saying that she was a whore, that he was deeply hurt, and asking how long she had waited to have sex with Brunson. He then left the house, but returned to sit on the roof to await a reaction to his message. (RT 406, 427-28, 442-43, 457-58, 462-64)

After Brunson and Laurel returned to the house, petitioner went to a telephone to call and speak privately with Laurel. When she did not answer, he left a message accusing her of using sex as a weapon and declaring that would burn down the house

before she would ever get it.  When Brunson listened to the message, he became alarmed and called the police, who arrived at about 1:00 a.m.  The officer advised Brunson and Laurel to lock the doors and windows.  After doing so, Brunson and Laurel laid down on adjoining living room couches and fell asleep.  (RT 40-41, 47-48, 184-87, 308-14, 407-408, 430, 468-72, 477-87)

Petitioner was stunned that Laurel had called the police, and after the officer left, he tried to get into the house to yell at her.  Finding the doors and windows locked, he got a small hammer from his tool box and used it to break the glass out of a sliding glass door to the bedroom.  When he walked into the living room, Brunson attacked him.  During their struggle, the hammer in petitioner's hand struck Brunson in the head.  As the struggle continued, petitioner dropped the hammer.  Laurel called the police.  When petitioner and Brunson fell to the floor, Brunson straddled petitioner until the police arrived.  (RT 196, 199-201, 207, 209-13, 407-11, 413-15, 419, 456, 487-90, 492-95, 504-08, 510-14, 517-18)

When officers arrived at the scene, Brunson was aggressive and cursing at petitioner, and continued so at the hospital emergency room.  Both Brunson and Laurel were treated for head injuries.  Petitioner appeared to be dazed, and had no idea that Laurel had been injured until he saw her at the hospital.  (RT 50-51, 71-73, 113-115, 119, 128-29, 149, 239-41, 391-92, 514, 517)

One day later, in an interview with District Attorney Investigator Robert Simerson, petitioner insisted that he had no intent to physically harm either Laurel or Brunson, and that he only had the hammer to gain entry to his home.  He was extremely anguished and remorseful about the incident.  (RT 417-19, 427, 520)

### III.  POINTS AND AUTHORITIES

### <u>CLAIM ONE</u>:

**THE TRIAL COURT'S DENIAL OF PETITIONER'S REQUEST TO INTRODUCE A VIDEOTAPE OF THE POLICE INTERVIEW OF WILLIAM BRUNSON VIOLATED PETITIONER'S RIGHTS TO CONFRONTATION AND CROSS-EXAMINATION OF WITNESSES, AND RIGHT OF DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

A criminal defendant has a constitutionally guaranteed right to confront his accusers under the Sixth Amendment.  Implicit in that guarantee is the right to cross-examine and introduce evidence which contradicts a witness' testimony.  *Olden v. Kentucky,* 488 U.S. 227, 231 (1988); *Smith v. Illinois*, 390 U.S. 129, 133 (1968); *Douglas v. Alabama*, 380 U.S. 415, 419 (1965).

The Ninth Circuit has repeatedly found reversible error in cases in which a defendant is not given "the maximum opportunity" to impeach the credibility of an adverse witness.  *See, United States v. Williams,* 668 F.2d 1064, 1069-1070 (9th Cir. 1981), citing *Burr v. Sullivan,* 618 F.2d 583, 587 (9th Cir. 1980); *Patterson v. McCarthy,* 581 F.2d 220 (9th Cir. 1978).  Other federal courts have done the same.  *See, e.g., United States v. Harvey,* 547 F.2d 720, 722 (2d Cir. 1976)["special treatment [must be] accorded evidence which is probative of a special motive to lie. . ."]   Relying on the Supreme Court's decision in *Alford v. United States,* 282 U.S. 687 (1931), the Second Circuit explained that:

> "all facts and circumstances which tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only should be received . . . [because] the right to place the witness in his proper setting and put the weight of his testimony and his credibility to a test is an essential safeguard to a fair trial. *Alford v. United States* (1931) 282 U.S. 687, 692.

1

2
*Harvey*, 547 F.2d at 723.

3        Here, the prosecution's case depended entirely on its winning a credibility battle.

4   Brunson's in-court testimony was belied by videotaped evidence of his demeanor and

5   untruthfulness during his interview by police just days after the incident.  During his trial

6   testimony, he was highly emotional and unable to continue with his testimony without

7   repeated requests for a recess.  During the interview, however, he was perfectly calm, and

8   in that apparently collected state of mind, he flatly denied the basic fact that he had a

9   sexual relationship with petitioner and petitioner's wife.

10        The trial court's refusal to permit petitioner to introduce this critical evidence of

11  Brunson's ability to lie and the disingenuous nature of Brunson's performance before the

12  jury could only have had a "substantial and injurious effect or influence in determining the

13  jury's verdict."  *Brecht v. Abrahamson* , 507 U.S. 619, 637 (1993).   Due to these

14  violations of petitioner's rights to confrontation, and to a fair trial, issuance of a writ is

15  required.

16

17

18

19

20

21

22

23

24

25

1

## CLAIM TWO:

2

**THE TRIAL COURT'S DENIAL OF PETITIONER'S REQUEST TO INTRODUCE A VIDEOTAPE OF HIS INTERVIEW BY THE DISTRICT ATTORNEY INVESTIGATOR VIOLATED PETITIONER'S RIGHT TO PRESENT A DEFENSE AND RIGHT OF DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

3

4

5

The right of a criminal defendant to present a complete defense, including the

6

right to have all pertinent evidence considered by the jury, is an essential attribute of the

7

adversary system of justice. *Taylor v. Illinois,* 484 U.S. 400, 408 (1988)["few rights are

8

more fundamental than that of an accused to present [evidence] in his defense," citing

9

*Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)]; *see also Crane v. Kentucky,* 476 U.S.

10

683, 690 (1986).

11

12

> Indeed, . . . the need to develop all relevant facts in the adversary
> system is both fundamental and comprehensive. The ends of
> criminal justice would be defeated if judgments were to be formed
> on a partial or speculative presentation of the facts. . . .

13

14

> *Taylor*, 484 U.S. at 409.

15

The few minutes it would have taken for the videotape of petitioner's statement to

16

the district attorney's investigator to be shown to the jury did not justify the trial court's

17

refusal to permit its play due to time constraints. The videotape reveals that petitioner was

18

extremely remorseful over the injuries sustained by Brunson and by his wife, who he did

19

not even remember striking. More plainly than any transcription of the interview could

20

have, the videotape would have allowed the jury to see for itself petitioner's anguish over

21

the circumstances and consequences of his struggle with Brunson, and to appreciate the

22

heart of petitioner's defense: that the injuries to Brunson and petitioner's wife were

23

accidentally inflicted.

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The trial court's refusal to permit petitioner to play the videotape for the jury had a "substantial and injurious effect or influence" on the verdict (*Brecht,* 507 U.S. at 637), as it led the jury to arrive at a verdict which was not informed by critical evidence in petitioner's defense. As a result of this further violation of petitioner's right to a fair trial, a writ must issue.

1

## CLAIM THREE:

2

3    **THE ADMISSION OF EVIDENCE OF ACTS OF PRIOR DOMESTIC VIOLENCE, AND THE TRIAL COURT'S RELATED JURY INSTRUCTION, CONSTITUTED VIOLATIONS OF PETITIONER'S RIGHT OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS**

4

5

6    California Evidence Code section 1109 provides that "in a criminal action in

7    which the defendant is accused of an offense involving domestic violence, evidence of the

8    defendant's commission of other domestic violence is not made inadmissible by Section

9    1101 if the evidence is not inadmissible pursuant to Section 352."  On the basis of that

10   statute, the trial court permitted the prosecutor to introduce evidence of prior uncharged

11   acts by petitioner over a span of fifteen years which purportedly involved domestic

12   violence.

13   At the conclusion of the evidence, the court instructed the jury pursuant to

14   CALJIC No. 2.50.02, as revised, in pertinent part as follows:

15

16   Evidence has been introduced for the purpose of showing that the
     defendant engaged in conduct involving domestic violence on one
17   or more occasions other than that charged in this case.

18                                    *  *  *

19   If you find that the defendant committed a prior offense involving
     domestic violence, you may, but are not required to, infer that the
20   defendant had a disposition to commit other offenses involving
     domestic violence.  If you find that the defendant had this
21   disposition, you may, but are not required to, infer that he was
     likely to commit and did commit the crime of which he is accused
22   in Count IV. . . .

23   The admission of this "propensity evidence," and the resulting jury instruction,

24   violated petitioner's due process rights under the Fifth and Fourteenth Amendments.

25

1   Due process demands that every criminal defendant is presumed innocent unless
2   and until each element of a charged offense is proven beyond a reasonable doubt.
3   *Sullivan v. Louisiana,* 508 U.S. 275, 277-78 (1993).  That right is substantially eroded by
4   a jury instruction suggesting that a defendant's prior acts may be sufficient to convict him
5   of a charged crime.
6        The United States Supreme Court has long upheld a policy of exclusion of other
7   crimes evidence.  In *Michelson v. United States,* 335 U.S. 469 (1948), the Court
8   recognized that evidence that a defendant is by propensity a probable perpetrator of the
9   charged crime "weigh[s] too much with the jury and . . . so overpersuade[s] them as to
10  prejudge one with a bad general record and deny him a fair opportunity to defend against
11  a particular charge."  *Id.* at 475-476.   Thus, the Court continued, "[t]he overriding policy
12  of excluding such evidence . . . is the practical experience that its disallowance tends to
13  prevent confusion of issues, unfair surprise and undue prejudice."  *Id.*; *accord*, *Old Chief*
14  *v. United States,* 519 U.S. 172, 181 (1997).  *See also, Gordon v. United States,* 383 F.2d
15  936, 940-41 (D.C. Cir. 1967)[propensity evidence should be excluded "because of the
16  inevitable pressure on lay jurors to believe that 'if he did it before he probably did it this
17  time.'"]
18       In *Spencer v. Texas,*  385 U.S. 554 (1967), the Supreme Court advanced its view
19  of the consequences of the improper use of propensity evidence.  A majority of the Court
20  held that it was not a violation of due process to admit *for other purposes* evidence which
21  happened to show a propensity to commit the present crime, *provided that the jury is*
22  *given a limiting instruction* "that it should not consider the prior conviction as any
23  evidence of the defendant's guilt on the charge on which he was being tried."  *Id.* at 558,

563-64.   Notably, then-Chief Justice Warren recognized in his partial dissent that "our decisions . . . suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause." *Id.* at 572-74.   The *Spencer* decision was clear.  As the Sixth Circuit has since held, "[t]he logical converse of [*Spencer's* holding] is that it is unfair and violative of due process if evidence of other crimes is admitted without a limiting instruction." *Murray v. Superintendent, Ky. State Penitentiary,* 651 F.2d 451, 453 (6th Cir. 1981).

Also following the Supreme Court's lead, the Ninth Circuit has squarely held that the admission of other crimes evidence for the purpose of inferring conduct in conformity therewith violates federal due process guarantees.  *McKinney v. Rees,* 993 F.2d 1378, 1384 (9th Cir. 1993); *Jammal v. Van De Kamp*, 926 F.2d 918, 920 (9th Cir. 1991);  s*ee also, Garceau v. Woodford,* 275 F.3d 769, 777 (9th Cir. 2001), *reversed and remanded on other grounds* (*Woodford v. Garceau,* 538 U.S. 202 (2003)[failure to apply amendments to habeas corpus statute]).

In *McKinney,* the Ninth Circuit identified the following four factors to consider in determining whether the introduction of propensity evidence is harmless error under *Chapman v. California,* 386 U.S. 18 (1967):

(1)  Whether the balance of the prosecution's case was "solely circumstantial;"

(2)  Whether the other crimes evidence was similar to the charge for which the defendant was on trial;

(3)  Whether the prosecution heavily relied on the other crimes evidence; and

(4)  Whether the evidence was "emotionally charged." *McKinney,* 993 F.2d at 1381-82, 1385-86.

Application of each of these four factors mandates a finding of reversible error in this case, particularly where none of the prior conduct resulted in any criminal charges.

First, the balance of the prosecutor's case against petitioner on the charge of corporal injury (to which the propensity evidence was allegedly relevant) was entirely circumstantial. Petitioner did not remember striking his wife, and had not even known that she was injured until he saw her in the hospital emergency room. His wife did not testify at trial.

Second, the other crimes evidence, including petitioner's having hit his wife some fifteen years before, was similar to the charge that he struck her with a hammer.

Third, as a case based entirely on circumstantial evidence, the prosecution clearly relied very heavily - - if not exclusively - - on the other crimes evidence.

Fourth, the details of petitioner's past conduct, including evidence of a previous "knock-down" fight, and of having slapped his wife, could not help but elicit the emotional reaction that the prosecution intended it to, particularly in the context of a charge of corporal injury to a spouse.

Moreover, the admission of this propensity evidence likely tainted the jury's consideration of the charges of assault with a deadly weapon of Brunson and petitioner's wife, and attempted murder of Brunson. Although the jury was instructed that the evidence was to be used for a limited purpose, i.e. to infer a propensity to commit the offense charged under Count 4 (corporal injury to spouse) (CT 141, 151), it defies reason and logic to assume that a finding of a propensity for violent conduct with regard to one charge would not effect the jury's consideration of other charges involving allegations of violence against both petitioner's wife and Brunson.

1

2

3

4

5

6

7

        In view of the entirely circumstantial and self-interested nature of the evidence against petitioner, the introduction of other crimes evidence with an instruction that the jury use that evidence to determine that petitioner committed the offense charged plainly violated petitioner's constitutional rights of due process and to a fair trial, and requires reversal under the standard announced in *Brecht,* 507 U.S. 619.  Issuance of the writ is required.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## CLAIM FOUR:

2

3

**THE TRIAL COURT'S INSTRUCTION REQUIRING JURORS TO INFORM THE COURT REGARDING JURY DELIBERATIONS VIOLATED PETITIONER'S RIGHTS TO A JURY TRIAL, TO JUROR UNANIMITY, TO JUROR NULLIFICATION, AND TO DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS**

4

5

At the conclusion of the evidence, and prior to jury deliberation, the trial court

6

instructed the jury pursuant to CALJIC No. 17.41.1 as follows:

7

8

> The integrity of a trial requires that jurors at all times during your deliberations conduct themselves as required by these instructions. Accordingly, should it occur that any juror refused to deliberate or expresses an intention to disregard the law, or to decide the case based on penalty or punishment or any other improper basis, it is the obligation of the other jurors to immediately advise the court of the situation.

9

10

11

12

(CT 188; RT 674)

13

Both explicitly and implicitly, this instruction informed the jury not only of its

14

duty to deliberate, but that (1) the trial court has a right to be advised of and evaluate the

15

propriety of the jurors' thought processes, statements, opinions and actions during

16

deliberations; (2) the jurors' oath obligates them to inform on one another to the court; and

17

(3) the trial court is entitled to, and will, take remedial and possibly punitive action if a

18

juror misspeaks during deliberations.

19

The California Supreme Court has concluded that CALJIC No. 17.41.1 should no

20

longer be given, since:

21

22

> [B]y specifying at the outset of deliberations that a juror has the obligation to police the reasoning and decisionmaking of other jurors, [the instruction] creates a risk of unnecessary intrusion on the deliberative process.

23

24

*People v. Engelman*, 28 Cal.4th 436, 441 (2002).

25

Nevertheless, the *Engelman* Court erroneously upheld the instruction against the defendant's constitutional challenges.  In each of the following respects, CALJIC No. 17.41.1 violated petitioner's federal constitutional rights to a jury trial, a unanimous jury verdict, and juror nullification, as well as his right to due process.

**1.  The Trial Court's Instruction Pursuant to CALJIC No. 17.41.1 Violated Petitioner's Rights to a Jury Trial and to Due Process Under the Fifth, Sixth and Fourteenth Amendments**

A criminal defendant has a fundamental right to a trial by jury, and to a unanimous jury verdict.   *Apodaca v. Oregon,* 406 U.S. 404 (1972).  The right to a jury trial includes a guarantee of privacy during jury deliberations to insure that jurors are freely able to express their views of the evidence presented during trial.  *United States  v. Symington,* 195 F.3d 1080, 1086 (9th Cir. 1999).

The Third Circuit has recognized that "the confidentiality of the thought processes of jurors, their privileged exchange of views, and the freedom to be candid in their deliberations are the soul of the jury system."  *United States v. Antar,* 38 F.3d 1348, 1367 (3d Cir. 1994) (Rosen, J. concur.)

Similarly, as the Second Circuit has explained,

> Juror privacy is a prerequisite of free debate, without which the decision-making process would be crippled.  The precise value of throwing together in a jury room a representative cross-section of the community is that a just consensus is reached through a thoroughgoing exchange of ideas and impressions.  For the process

to work according to theory, the participants must feel completely free to dissect the credibility, motivations, and just deserts of other people. Sensitive jurors will not engage in such a dialogue without some assurance that it will never reach a larger audience.

> *United States v. Thomas,* 116 F.3d 606, 618-619 (2d Cir. 1997), quoting Note, <u>Public Disclosures of Jury Deliberations</u> (1983) 96 Harvard L. Rev. 886, 889.

Therefore, numerous federal courts have held that in order to protect the right to a jury trial and to jury unanimity, a trial court may not infringe on the privacy of jury deliberations in order to ascertain whether a complaint or a request to discharge a juror was actually motivated by a disagreement over the juror's view of the evidence. *See, Symington,* 195 F.2d at 1086; *Thomas,* 116 F.3d at 620; *United States v. Brown,* 823 F.2d 591, 596 (D.C. Cir. 1987). It is not uncommon for jurors to accuse one another of misconduct, or to request discharge themselves, based on an asserted refusal to deliberate, consideration of matters arguably outside the evidence, or inability to follow the law; but it is equally common for such accusations to arise where the complaints arise solely out of juror disagreement over the evidence. *See, Symington*, 195 F.3d at 1083-84 [reversing for removal of elderly juror accused of "blocking" the majority]; *Thomas*, 116 F.3d at 618-19 [reversing for removal of only Black juror accused of saying defendants committed the offenses out of economic necessity, and acting as a "holdout" based on a belief in the insufficiency of the evidence]. Thus, where the record reveals a reasonable possibility that a complaint regarding a fellow juror is based solely on juror disagreement over the verdict, a trial court must either declare a mistrial or return the juror to deliberations. *Symington,* 195 F.2d at 1087.

1      A threat of intrusion on the privacy of jury deliberations, magnified by the threat

2 of sanctions for perceived misconduct, effectively eviscerates the right to a jury trial.  In

3 addition to chilling all jurors' expression and exercise of independent judgment during

4 deliberations, it at least implicitly encourages jurors to consider factors extraneous to the

5 evidence in their deliberations, and silences the minority and "sensitive" jurors from

6 participation in a deliberative process which is essential to the right to a jury trial and a

7 unanimous verdict.

8      In these respects, the trial court's instruction pursuant to CALJIC No. 17.41.1

9 violated petitioner's rights to a jury trial and to due process under the Fifth, Sixth and

10

11 Fourteenth  Amendments.  A writ should issue.

12 **2.  The Trial Court's Instruction  Pursuant to CALJIC No. 17.41.1 Violated
   Petitioner's  Right to Juror Nullification Under the Sixth and Fourteenth
13 Amendments**

14      Historically, the federal courts have recognized the right of a jury to exercise

15 lenity by refusing to apply the law in a given context.  *See, Dunn v. United States,* 284

16 U.S. 390, 393-94 (1932)[inconsistent verdicts stand because jury may have exercised

17 nullification power]; *United States v. Powell,* 469 U.S. 57, 64 (1984)[ *Dunn* recognized

18 that it is the jury's historic function to check against the arbitrary or oppressive exercise

19 of power];  *United States v. Schmitz,* 525 F.2d 793, 794 (9th Cir. 1975)[the jury has the

20 inherent power to pardon a defendant regardless of the evidence].

21      In this case, the trial court's instruction misled the jury to believe that its right to

22 decide this case as it deemed just was encumbered by the threat of disclosure of private

23 deliberations and possible sanctions.  In this additional respect, the error constituted a

24

25 structural defect requiring reversal.  *See, Arizona v. Fulminante,* 499 U.S. 279, 309

1  (1991); *see also Sullivan v. Louisiana,* 508 U.S. 276, 280 (1993)[reversal per se mandated

2  where "there has been no jury verdict within the meaning of the Sixth Amendment."].

3     In any event, it cannot be proven that these constitutional errors did not have a

4  "substantial and injurious effect or influence in determining the jury's verdict," under the

5  standard for reversal announced in *Brecht v. Abrahamson*, 507 U.S. 619.   Accordingly,

6  this Court should issue a writ of habeas corpus.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                          IV.

3                                    CONCLUSION

4          For the foregoing reasons, petitioner Mark R. Wilkes respectfully requests that

5   this Court issue an Order to Show Cause based on his prima facie showing of violations of

6   the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and,

7   following consideration of this matter, issue a writ of habeas corpus reversing the

8   judgment of conviction all on counts.

9
    DATED:        July ___, 2004
10

11                                          Respectfully submitted,

12

13                                          _____
                                            KATHARINE DEMGEN
14                                          Attorney for Petitioner

15

16

17

18

19

20

21

22

23

24

25